AO 91 (Rev. 08/09) Criminal Complaint                                AUSA Janice LeClainche

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

United States of America )
v. )
REFUGIO MAGANA ) Case No. 10-8250-JMH
a/k/a "Cuco" )
)
)

FILED by ___JM___ D.C.

SEP 1 1 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of ___September 2, 2010___ in the county of ___Palm Beach___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Conspiracy to possess at least 500 grams of cocaine with intent to distribute |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_Complainant's signature_

TFO Sean Meyers, DEA
_Printed name and title_

Sworn to before me and signed in my presence.

I find probable cause

Date: 9-11-10

_Judge's signature_

City and state:    West Palm Beach, FL          U.S. Magistrate Judge James M. Hopkins
                                                       _Printed name and title_

## AFFIDAVIT

Your affiant, Sean Meyers, a Task Force Officer with the United States Drug Enforcement Administration (DEA), United States Department of Justice, being duly sworn, states:

1. I am a deputized Task Force Officer with the United States Drug Enforcement Administration (DEA). As such I am a "law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7) who is empowered to conduct criminal investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been a sworn Police Officer with the West Palm Beach Police Department (WPBPD) since August 1999. I was assigned to the WPBPD narcotics unit for approximately five years before joining the DEA Task Force in April 2009. I have successfully completed the Criminal Justice Standards and Training Police Academy and am certified by the Criminal Justice Standards and Training Commission as a Law Enforcement Officer.

3. I have specialized training in the subject of narcotics identification, street-level drug trafficking, surveillance, organized crime, and drug abatement techniques. I have also attended DEA's Basic Narcotics Investigation School where I received numerous hours of in-house training in search and seizure. I have been personally involved in investigations concerning the possession, manufacture, and distribution of controlled substances which include cocaine, "crack" cocaine, heroin, marijuana, methamphetamine, and 3, 4-methylenedioxymethamphetamine (otherwise known as

1

MDMA or "Ecstasy"). During the course of my employment at the WPBPD, I have arrested numerous individuals for various drug violations and have spoken with numerous drug dealers, gang members and informants concerning the methods and practices of drug trafficking. Through investigations and training, I have become familiar with narcotic traffickers' methods of operation. I have been involved in hundreds of narcotics-related arrests and I am very familiar with street terminology and how controlled substances are packaged, sold, smuggled, and transported.

4. This affidavit is presented in support of a criminal complaint charging Refugio MAGANA with conspiring to possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); all in violation of Title 21, United States Code, Section 846. The information presented by your affiant in this affidavit has been obtained directly by your affiant or by other law enforcement officers who are involved with this investigation. Your affiant has set forth only the facts that your affiant believes are necessary to establish probable cause.

5. During July 2010, special agents and task force officers from the DEA West Palm Beach Resident Office, in conjunction with investigators from the Palm Beach County Sheriff's Office, initiated an investigation into the cocaine trafficking activities of Jose Orozco and his associates.

6. The investigation to date has included the use of physical surveillance and the Court-ordered interception of Jose Orozco's cellular telephone. The telephone calls detailed as part of this affidavit do not constitute all of the intercepted calls, but were selected in order to establish probable cause to support this criminal complaint.

2

7. On August 20, 2010, the Honorable Donald M. Middlebrooks, United States District Judge, signed an order authorizing interception of wire communications of Jose Orozco's cellular telephone (561) 573-9767. On or about August 21, 2010, agents and task force officers of the DEA West Palm Beach Resident Office began a Court-ordered interception of cellular telephone number (561) 573-9767 which is a pre-paid cellular telephone with an unnamed subscriber and a subscriber address of 17330 Preston Road, Dallas, Texas, and utilized by Jose Orozco. The following characteristics of the intercepted conversations are based on wire monitor call summarizations and on my training and experience to date in this and other investigations. Intercepted conversations are hereafter identified by date, and approximate time. The conversations were in Spanish and were translated by the monitors/translators.

8. On September 2, 2010 at approximately 6:11 PM, agents intercepted an incoming call to 561-573-9767, utilized by Jose Orozco, from 561-436-3512, subscribed to Cell Phone at 3990 Lakewood Road, Lake Worth, Florida, and utilized by Refugio MAGANA, a.k.a. "Cuco." During the call, MAGANA stated, "Half dude." Orozco replied, "Oh, alright dude." Agents believe that MAGANA told Orozco that he wanted to purchase half a kilogram of cocaine from Orozco.

9. On September 2, 2010 at approximately 6:12 PM, agents intercepted an outgoing call to 863-414-2062, a prepaid cellular telephone with no subscriber information, and utilized by Luis Enrique Martinez-Resendiz, a drug courier for Jose Orozco, from 561-573-9767, utilized by Jose Orozco. During the call Orozco stated, "Oh. And that, that half, um didn't, didn't get messed up? Martinez-Resendiz advised, "Uh, no it's fine." Orozco then stated, "Oh. Well take it to him at his house, dude." Agents believe that Orozco

3

told Martinez-Resendiz to deliver the half-kilogram of cocaine to MAGANA at his West Palm Beach residence.

10. A short time later, surveillance agents observed a tan Toyota Camry, bearing Florida tag ADVH66, leaving 4196 Vicliff Road, West Palm Beach, Palm Beach County, in the Southern District of Florida, and traveling to 4819 Clinton Boulevard, in West Palm Beach, Palm Beach County, in the Southern District of Florida. Agents observed Luis Enrique Martinez-Resendiz and Roberto Ramirez Perez, another drug courier for Orozco, in the Toyota Camry. Agents saw Martinez-Resendiz leave the Toyota Camry and enter the Clinton Boulevard residence. A few moments later, Martinez-Resendiz was observed leaving the residence and getting into the Toyota Camry. Agents believe that Perez and Martinez-Resendiz transported one-half kilogram (500 grams) of cocaine from their Vicliff residence to MAGANA at his Clinton Boulevard residence. After the transaction, agents followed Perez and Martinez-Resendiz from the Clinton Boulevard residence to Orozco's residence at 877 Arlington Drive in West Palm Beach, Florida. Agents believe that after Perez and Martinez-Resendiz delivered cocaine to MAGANA, they transported the proceeds from the drug transaction to Orozco at the Arlington residence.

11. Based on previous intercepted telephone calls on Orozco's cellular telephone and surveillance, agents have observed Jose Orozco and Roberto Ramirez Perez and Luis Enrique Martinez-Resendiz together at the Arlington residence and have determined that Perez and Resendiz are drug couriers for Jose Orozco. Since July 2010 surveillance agents have also observed Perez and Resendiz go to and from the Vicliff Road residence almost every day at various times and they believe that Perez and Resendiz were living at the Vicliff residence during that time. Based on intercepted calls and surveillance, agents

4

believe that cocaine was stored at the Arlington and Vicliff residences.

12. On September 8, 2010, federal agents arrested Jose Orozco after he took delivery of four kilograms of cocaine at his Arlington residence. The cocaine was delivered to Orozco by a source of supply from Miami. The men who delivered the cocaine were also arrested and found to be in possession of $100,000 in cash. The cocaine was field tested for the presence of cocaine with positive results.

13. Based on the intercepted calls between Orozco and MAGANA, your affiant believes that on or about September 2, 2010, Orozco and his couriers distributed 500 grams of powder cocaine to MAGANA in Palm Beach County, Florida.

14. On September 10, 2010, law enforcement agents executed a lawful search warrant at MAGANA's Clinton Boulevard residence. Agents found MAGANA alone in the residence. Agents seized approximately two ounces of cocaine, a bundle of U.S. currency, a large cache of firearms, including rifles. MAGANA was arrested by federal agents and transported to the DEA office in West Palm Beach, Florida. MAGANA, who speaks English, was given his *Miranda* rights by TFO Paniagua. MAGANA understood his rights and agreed to speak to your affiant and TFO Scott Spruill. MAGANA admitted that over the last three to four years, he has purchased a minimum of at least one ounce of cocaine per week from Orozco, who is known to him as "Willie." Your affiant knows that "Willie" is a nickname often used by Orozco. MAGANA said he would sometimes buy a larger quantity of cocaine from Orozco based on its availability. MAGANA has admitted to purchasing half-kilogram quantities of cocaine from Orozco. MAGANA said that Orozco's runners would normally deliver the cocaine to MAGANA.

16. Based on the facts and information set forth in this affidavit, your affiant believes that there is probable cause to believe that MAGANA conspired with others in violation of Title 21, United States Code Section 846 (conspiracy to possess with intent to distribute controlled substances).

Further your affiant sayeth naught.

_____
Sean Meyers, Task Force Officer
U.S. Drug Enforcement Administration

Sworn and subscribed to
before me, this __11__ day
of September, 2010.

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

6